# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

No. 06-3562
_____

| | | |
|---|---|---|
| Auto-Owners Insurance Company, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| The Tribal Court of the Spirit Lake | * | |
| Indian Reservation; Devils Lake Sioux | * | |
| Tribal Education Board, doing business | * | |
| as Four Winds Elementary School; | * | |
| Fort Totten Public School District, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Tate Topa Tribal Education Board, | * | |
| also known as Spirit Lake Sioux | * | |
| Tribal Education Board, | * | |
| | * | |
| Defendant/Appellant, | * | |
| | * | |
| Four Winds High School, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Tate Topa Tribal School, also known | * | |
| as Four Winds Elementary School, | * | |
| | * | |
| Defendant/Appellant, | * | |
| | * | |

Vivian Lohnes, as Court-Appointed        *
Custodian and Guardian of her Minor     *
Granddaughter, Mary DeLorme,            *
                                         *
            Defendant.                   *

_____

Submitted: May 17, 2007
Filed:  August 1, 2007

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Auto-Owners Insurance Company ("Auto Owners") filed a declaratory judgment action against its insureds, the Tate Topa Tribal Education Board and the Tate Topa Tribal School (collectively "Tate Topa"), in light of potential coverage claims. Tate Topa moved to dismiss the suit, contending that the action was barred by sovereign immunity, which it enjoyed as an entity of the Spirit Lake Sioux Tribe. Tate Topa now appeals the district court's order denying its renewed motion to dismiss. We reverse the decision of the district court.

I. *Background*

In April 2001, a Tate Topa Elementary School student was sexually assaulted by a student at the Fort Totten Public High School. In August 2004, Vivian Lohnes, the guardian of the elementary school student, brought a negligence suit in Spirit Lake Tribal Court against Tate Topa ("Lohnes action"). At the time of the incident, Auto Owners insured Tate Topa through a Commercial General Liability Policy and a Commercial Umbrella Policy.

Auto Owners brought this declaratory judgment action in federal district court, seeking a determination of whether the insurance policies provided coverage for the alleged sexual assault of the elementary school student. In response, Tate Topa filed a motion to dismiss the federal action, asserting that Tate Topa was immune from suit absent an express and unequivocal waiver of sovereign immunity. Tate Topa also argued that the district court lacked subject matter jurisdiction. Lohnes also filed a motion to dismiss, arguing that the tribal exhaustion doctrine applied.

In response to the motions to dismiss, Auto Owners moved the district court for permission to amend its initial complaint. Auto Owners's revised complaint alleged federal question jurisdiction and sought a declaration that the tribal court was without jurisdiction to hear the Lohnes action. Tate Topa opposed the motion to amend, arguing that the tribal exhaustion doctrine gave the tribal court the first opportunity to address whether it had jurisdiction over the Lohnes action. In the interim, Tate Topa moved the tribal court for dismissal of the Lohnes action based on lack of subject matter jurisdiction, as federal courts have exclusive jurisdiction over claims implicating the Federal Tort Claims Act (FTCA).

On September 22, 2005, the district court granted Auto Owners's motion to amend the complaint, finding that tribal court jurisdiction issues invoked federal question jurisdiction. The district court also found that the tribal exhaustion doctrine was inapplicable because, by statute, the underlying Lohnes action implicated the FTCA. The district court thus denied Tate Topa's and Lohnes's motions to dismiss. Thereafter, Tate Topa renewed its motion to dismiss based on sovereign immunity. Four months later, Auto Owners filed a motion for summary judgment as to its obligation to defend and indemnify Tate Topa.

On September 7, 2006, the district court denied Tate Topa's renewed motion to dismiss, holding that "sovereign immunity is not applicable here as the tribal court has exceeded its jurisdictional authority." The district court gave Tate Topa 30 days to

respond to the outstanding motion for summary judgment. Tate Topa timely filed a notice of appeal from the district court's September 7, 2006 order but did not appeal the September 22, 2005 order. On January 17, 2007, the district court granted Auto Owners's motion for summary judgment.

## II. *Discussion*

On appeal, Tate Topa argues that the district court erroneously concluded that: (1) it had jurisdiction over the declaratory judgment action when it denied Tate Topa's motion to dismiss and (2) Tate Topa cannot raise a sovereign immunity defense because the tribal court exceeded its jurisdictional authority in the Lohnes action.

In response, Auto Owners notes that the district court's ruling that the tribal court lacks jurisdiction over the underlying Lohnes action is unchallenged. Thus, the crucial issue is whether the district court may also exercise jurisdiction over the declaratory judgment action. According to Auto Owners, Tate Topa's sovereign immunity is not a bar to the continuing exercise of jurisdiction because the remaining claim is only for declaratory relief. Specifically, Auto Owners seeks a declaration that it has no duty to defend or indemnify Tate Topa. Moreover, Auto Owners asserts that the district court must address the pending summary judgment motion for declaratory relief because the tribal court has ignored the district court's finding that the tribal court lacks jurisdiction.

As a threshold matter, we must necessarily determine whether subject matter jurisdiction exists over Auto Owners's declaratory judgment action. This court may raise the issue of subject matter jurisdiction sua sponte. *Lundeen v. Canadian Pac. Ry. Co.*, 447 F.3d 606, 611 (8th Cir. 2006).

Even if an Indian tribe waives its sovereign immunity, such a waiver does not automatically confer jurisdiction on federal courts. *Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 671–72 (8th Cir. 1986) ("The [Tribal] Housing

-4-

Authority's waiver only nullifies the Housing Authority's use of sovereign immunity as a possible defense to Weeks' breach of contract action. That waiver of immunity does not determine in what forum a suit against the Housing Authority may properly be brought."). A federal court must make a separate determination as to whether it has subject matter jurisdiction over the suit. *Id*. at 672. Upon review, we find neither diversity of citizenship nor federal question jurisdiction applicable and conclude that subject matter jurisdiction is lacking.

### A. *Diversity*

"A federal court has original jurisdiction over a civil action if the parties are of diverse state citizenship and the courts of the state in which the federal court sits can entertain the suit." *Id*.; *see also* 28 U.S.C. § 1332(a)(1). "[A]n Indian tribe is not a citizen of any state and cannot sue or be sued in federal court under diversity jurisdiction." *Standing Rock Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135, 1140 (8th Cir. 1974); *see also Gaming World Int'l v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 847 (8th Cir. 2003) ("Diversity jurisdiction is not available here under 28 U.S.C. § 1332 because Indian tribes are neither foreign states nor citizens of any state.") (internal citations omitted).

In the present case, no diversity jurisdiction exists as a basis for subject matter jurisdiction because Tate Topa—a sub-entity of the Spirit Lake Sioux Tribe—is considered a part of the Indian tribe. *See, e.g.*, *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000) ("It is [ ] undisputed that a tribe's sovereign immunity may extend to tribal agencies. . . . [H]ere the [Community] College serves as an arm of the tribe and not as a mere business and is thus entitled to tribal sovereign immunity."); *Weeks*, 797 F.2d at 670 ("It has been held that a housing authority, established by a tribal council pursuant to its powers of self-government, is a tribal agency."); *Dillon v. Yankton Sioux Tribe Hous. Auth.*, 144 F.3d 581, 583 (8th Cir. 1998) ("Therefore, we must treat the Authority as a tribal agency rather than a separate

corporate entity created by the tribe."). As recognized in *Dorgan*, an Indian tribe is not a citizen of a state for diversity purposes.

## B. *Federal Question*

In addition to diversity subject matter jurisdiction, a federal court has "'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Weeks*, 797 F.2d at 672 (quoting 28 U.S.C. § 1331). While a "non-frivolous claim of a right or remedy under a federal statute is sufficient to invoke federal question jurisdiction," "the fact that [a tribal entity] is created by and operates on behalf of an Indian tribe is not alone sufficient to find the existence of a federal question." *Id.* (holding that corporation that contracted with the Oglala Housing Authority to build housing units on the reservation could not bring breach of contract suit against the Housing Authority because the district court lacked federal question jurisdiction over the action, as "the rights which [the corporation] s[ought] to enforce [were] based on its construction contract with the Housing Authority, interpretation of which is governed by local, not federal, law"); *see also Gaming World*, 317 F.3d at 847 ("In terms of jurisdiction there is a significant difference between ordinary contract disputes involving Indian tribes and those raising issues in an area of extensive federal regulation.") (internal citations omitted).

But even where a federal question exists, due to considerations of comity, federal court jurisdiction does not properly arise until available remedies in the tribal court system have been exhausted. In *National Farmers Union Insurance Co. v. Crow Tribe of Indians of Montana*, 471 U.S. 845 (1985), a member of an Indian tribe filed suit against a school district in tribal court and obtained a default judgment. *Id.* at 847. Thereafter, the school district and its insurance company commenced litigation in federal district court, seeking a preliminary injunction to keep the member from executing on the default judgment. *Id.* The school district and insurance company argued that "the right which they assert—a right to be protected against an unlawful exercise of Tribal Court judicial power—has its source in federal law because federal

law defines the outer boundaries of an Indian tribe's power over non-Indians." *Id*. at 850–51.

The Court concluded that "[t]he question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331." *Id*. at 852. Because the school district and insurance company argued that federal law divested the tribe of this aspect of its sovereignty, the Court found that it was "federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference." *Id*. at 852–53. Therefore, the action arose under federal law, and the district court correctly found that a federal court could determine whether the tribal court exceeded its jurisdictional limits. *Id*. at 853. After finding that federal question jurisdiction existed, the Court held that "the questions of whether a tribal court has the power to exercise civil subject-matter jurisdiction over non-Indians" "should be conducted in the first instance by the Tribal Court itself." *Id*. at 855–56. According to the Court, the "[e]xhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review." *Id*. at 856.

Similarly, in *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9 (1987), a member of an Indian Tribe was injured while working for a Montana corporation, which was located on the Indian reservation and owned by Indians residing on the reservation. *Id*. at 11. The member filed suit against the corporation and its insurance company in tribal court, and the insurance company moved to dismiss the action for failure to properly allege tribal court jurisdiction and for lack of subject matter jurisdiction. *Id*. The tribal court allowed the member to amend his complaint to allege facts from which jurisdiction could be determined and held that it had subject matter jurisdiction over the suit. *Id*. Before the tribal court's jurisdictional ruling, the insurance company filed suit in federal district court against the member and the

corporation, alleging diversity of citizenship as the basis for federal jurisdiction. *Id*. at 12. The insurance company "sought a declaration that it had no duty to defend or indemnify the [corporation] because the injuries sustained by the [member] fell outside the coverage of the applicable insurance policies." *Id*. The member moved to dismiss the action for lack of subject matter jurisdiction, and the district court granted the motion.

On appeal, the Supreme Court noted that in *National Farmers* it had "concluded that, although the existence of tribal court jurisdiction presented a federal question within the scope of 28 U.S.C. § 1331, considerations of comity direct that tribal remedies be exhausted before the question is addressed by the District Court." *Id*. at 15. According to the Court, "[t]he federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, *including appellate courts*. At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." *Id*. at 16–17 (emphasis added). Thus, while the tribal court had made its initial determination that it had jurisdiction over the dispute, the insurance company had failed to obtain appellate review, as provided by the Tribal Code. *Id*. Therefore, the Court held that "[u]ntil appellate review is complete, the Blackfeet Tribal Courts have not had a full opportunity to evaluate the claim and federal courts should not intervene." *Id*.; *see also Gaming World*, 317 F.3d at 850–51 (holding that the federal policy supporting the development of tribal courts "would be undermined if [the casino operating company] w[as] permitted to evade the jurisdiction of the [tribal court] over the previously filed declaratory judgment action there," meaning that the district court erred by not deferring for exhaustion of tribal remedies).

In *Weeks*, this court held that the corporation's breach of contract claim against the Oglala Housing Authority did not "require interpretation of the validity, construction, or effect of federal law," meaning that "no subject matter jurisdiction

over the Housing Authority based on federal question exist[ed] [ ]." 797 F.2d at 672. In a footnote, this court explained:

> The facts in *National Farmers* differ from this case. In *National Farmers,* a non-Indian sought injunctive relief in federal court from execution of a tribal court's default judgment against it without first seeking any available relief from the tribal court. *Because Weeks has never brought this suit before the tribal court, the tribal court's authority has not been similarly challenged here*. Our holding that there exists no federal question jurisdiction at this time should not be construed to bar any subsequent suit brought by Weeks seeking to review the extent of any jurisdiction exercised by the tribal court. Whether federal jurisdiction might exist for such review is not before us at this time.

*Id*. at 672 n.3 (emphasis added).

Federal question jurisdiction is not implicated at this time. Auto Owners's declaratory judgment action sounds in contract law raising a state-law question regarding the existence of coverage under the policies issued to Tate Topa. Both parties acknowledge that the underlying Lohnes action in tribal court invokes the FTCA. But this separate declaratory judgment action in federal court does not involve the FTCA. Ordinary contract principles apply to the claim. As noted in *Weeks* and *Gaming World*, an ordinary contract dispute involving an Indian tribe does not raise a federal question.

Additionally, Auto Owners cannot rely on supplemental jurisdiction[1] to bring this contract action against Tate Topa, as no additional claim establishes diversity jurisdiction or federal question jurisdiction. In its amended complaint, Auto Owners alleged that the tribal court was without jurisdiction to entertain the claim brought before it by Lohnes, as the claim arises under the FTCA, which confers exclusive jurisdiction to federal courts. Auto Owners asserts that this additional allegation raises federal question jurisdiction and, in turn, allows the district court to entertain the contract action. We find three problems with this argument.

First, the record contains no evidence that Auto Owners was a party to Lohnes action in which the tribal court declared that it had jurisdiction over Lohnes's negligence claim against Tate Topa. In the Lohnes action, Tate Topa—not Auto Owners—challenged the tribal court's jurisdiction. Thus, as in *Weeks*, Auto Owners has never challenged the tribal court's jurisdiction in the tribal court.

Second, even assuming that Auto Owners did challenge the tribal court's jurisdiction in tribal court, tribal remedies have not been exhausted, as required by *National Farmers*, *Iowa Mutual*, and *Gaming World*. Tribal remedies must be exhausted before the district court may properly consider the existence of tribal court jurisdiction. In the present case, while the tribal court issued an order stating that it has jurisdiction, the matter is currently on appeal to the Northern Plains Intertribal Court

---

[1]Section 1367 of 28 U.S.C. provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

of Appeals. Until this appellate review is complete, tribal remedies have not been exhausted, and the district court erred by not deferring for exhaustion of such remedies.

Third, to establish supplemental jurisdiction, the "[c]laims within the action" must "derive from a common nucleus of operative fact." *Myers v. Richland County*, 429 F.3d 740, 745 (8th Cir. 2005) (internal quotations and citations omitted). Here, even if Auto Owners had exhausted the remaining tribal remedies, meaning that the federal court could then entertain the federal question of whether the tribal court exceeded its jurisdiction in the Lohnes action, no supplemental jurisdiction would exist to entertain the state declaratory judgment action against Tate Topa because the claims do not derive from a common nucleus of operative fact. Whether the tribal court lacked jurisdiction over the Lohnes action depends on facts relating to the application of the Tribally Controlled Schools Act (TCSA)[2], 25 U.S.C. §§ 2501 et seq. and, in turn, the FTCA. In contrast, Auto Owners's contract claim against Tate Topa does not depend on Tate Topa's status as a part of the BIA under the TCSA. Instead, such claim depends on the interpretation and application of the insurance policies' language.

Because we hold that no subject matter jurisdiction exists over Auto Owners's declaratory judgment action against Tate Topa, we need not decide whether Tate Topa is entitled to sovereign immunity.

---

[2]The Spirit Lake Sioux Tribe operates Tate Topa pursuant to a grant from the Bureau of Indian Affairs (BIA) under the TCSA. Section 450f of 25 U.S.C. "imposes liability upon the United States for acts of tribal organizations and their employees administering a grant agreement pursuant to the TCSA." *Big Owl v. United States*, 961 F. Supp. 1304, 1307 (D. S.D. 1997). The result of § 450f is that tribal schools and its members "are considered employees of the BIA and can be sued as such under the FTCA subject to the protections afforded government employees under that Act." *Id.* at 1308.

### III. *Conclusion*

Accordingly, we reverse the district court's order denying Tate Topa's motion to dismiss and remand the matter for dismissal of the action against Tate Topa.

BEAM, Circuit Judge, concurring.

I concur in the result reached by the court.

_____