**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROBERT NANOMANTUBE,

        Plaintiff-Appellant,

    v.

THE KICKAPOO TRIBE IN
KANSAS; KICKAPOO TRIBE IN
KANSAS TRIBAL COUNCIL;
GOLDEN EAGLE CASINO,

        Defendants-Appellees.

No. 09-3347

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 09-CV-04107-RDR-KGS)**

---

A.J. Kotich (Glenn H. Griffeth with him on the briefs), Topeka, Kansas, for
Plaintiff-Appellant.

Charley L. Laman of Laman Law Office, Glendale, Arizona, for Defendants-
Appellees.

---

Before **TYMKOVICH**, **McKAY**, and **GORSUCH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

In this case we are called upon to decide whether an Indian tribe's
agreement to comply with the provisions of Title VII effects a waiver of the
tribe's sovereign immunity from suit.

Robert Nanomantube filed this employment discrimination action against his former employer, the Kickapoo Tribe in Kansas, as well as the Tribe's governing body and the unincorporated tribal casino at which Mr. Nanomantube had served as the acting general manager. The district court dismissed the case for lack of jurisdiction based on tribal sovereign immunity, and this appeal followed. We review de novo the district court's decision to dismiss the case and its ruling on sovereign immunity. *See E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1303 (10th Cir. 2001).

"Indian tribes are neither states, nor part of the federal government, nor subdivisions of either. Rather, they are sovereign political entities possessed of sovereign authority not derived from the United States, which they predate." *NLRB v. Pueblo of San Juan*, 276 F.3d 1186, 1192 (10th Cir. 2002) (en banc). As a dependent sovereign entity, an Indian tribe is not subject to suit in a federal or state court unless the tribe's sovereign immunity has been either abrogated by Congress or waived by the tribe. *See Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009-10 (10th Cir. 2007). In either case, the waiver or abrogation of sovereign immunity "must be unequivocally expressed" rather than implied. *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1293 (10th Cir. 2008).

Mr. Nanomantube first suggests we should find the Tribe subject to suit because his Title VII claims do not implicate the tribal self-government concerns

-2-

that inform the question of a tribe's regulatory or adjudicative authority over nonmembers of the tribe. *See Montana v. United States*, 450 U.S. 544, 565-66 (1981) (discussing the extent of tribes' authority over the activities or conduct of nonmenbers of the tribe). Mr. Nanomantube is conflating two different aspects of tribal sovereignty, and we have already rejected the notion that a tribe cannot "invoke its sovereign immunity from suit in an action that challenges the limits of the tribe's authority over non-Indians." *Miner*, 505 F.3d at 1012. Whether or not the Tribe could exercise regulatory or adjudicative authority over Mr. Nanomantube, the relevant inquiry in this case remains the "Supreme Court's straightforward test to uphold Indian tribes' immunity from suit"—whether the tribe's immunity has either been abrogated by Congress or waived by the tribe. *Id.* at 1010.

It is clear that Congress did not abrogate tribal immunity with regard to Title VII. Indeed, rather than expressing any intention to abrogate tribal immunity, Congress specifically exempted Indian tribes from the definition of "employers" subject to Title VII's requirements. *See* 42 U.S.C. § 2000e(b).[1] Thus, the Tribe's sovereign immunity from suit remains intact unless the Tribe has clearly and unequivocally waived its sovereign immunity with respect to Title

---

[1] Because we affirm the dismissal of the case on sovereign immunity grounds, we need not and do not address the question of how this definitional exclusion might affect the merits of Mr. Nanomantube's Title VII claim.

VII claims.

Mr. Nanomantube argues that the Tribe waived its sovereign immunity through a single sentence contained in the casino's employee handbook. Specifically, the handbook states: "The Golden Eagle Casino will comply with the provisions of Title VII of the Civil Rights Act of 1964 and 1991, and the Tribal Employment Rights Ordinance of the Kickapoo Tribe in Kansas." (Appellant's App. at 23.) Mr. Nanomantube notes that Title VII includes jurisdictional and enforcement provisions, and he argues that the Tribe, by agreeing to comply with the provisions of Title VII, thus unequivocally consented to be subject to enforcement proceedings brought in federal or state courts. For support, he relies on the Supreme Court's decision in *C&L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411 (2001), in which the Court found a clear waiver of tribal sovereign immunity based on a contract's choice-of-law and arbitration provisions. He also relies on our statement in *Native American Distributing* that "[i]t is also undisputed that the Seneca-Cayuga Tribe has unequivocally waived its own immunity via the 'sue or be sued' clause in the Corporate Charter." 546 F.3d at 1293.

We are not persuaded that a tribe's agreement to comply with Title VII, without more, constitutes an unequivocal waiver of tribal sovereign immunity. In contrast to the *C&L* contract or the *Native American Distributing* charter, the Tribe's handbook in this case contained no reference to tribunals at which

-4-

disputes could be resolved or legal remedies enforced.  *Cf. C&L*, 532 U.S. at 419 (noting that the contract provided for the application of Oklahoma law and for the enforcement of arbitral awards "in accordance with applicable law in any court having jurisdiction thereof"); *Native American Distributing*, 546 F.3d at 1290 (quoting the corporate charter's statement that the tribe's corporate entity could "sue and be sued . . . in any court"); *see also id.* at 1293 n.2 (declining to address whether this type of clause would function as a waiver of sovereign immunity in general, since this question was not in dispute in the present appeal).  Rather, the Tribe simply agreed to comply with the provisions of Title VII, with no reference to any forum where this agreement could be enforced.  Although some ambiguity may be created by the fact that Title VII includes jurisdictional and enforcement provisions, this ambiguity falls well short of creating an unequivocal expression of waiver.

We thus hold that the Tribe's agreement to comply with Title VII, like similar agreements to comply with other federal statutes, may "convey a promise not to discriminate," but it "in no way constitute[s] an express and unequivocal waiver of sovereign immunity and consent to be sued in federal court."  *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1289 (11th Cir. 2001); *see also Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1460-61 (10th Cir. 1989) (holding that the promise to ensure rights, although it may "place[] substantive constraints on the Tribe," does not constitute an unequivocal expression of waiver);

-5-

*Demontiney v. United States ex rel. Dep't of Interior, Bureau of Indian Affairs*, 255 F.3d 801, 814 (9th Cir. 2001) ("Moreover, Demontiney provides no support for the proposition that the Tribe's incorporation of [the Indian Civil Rights Act] into its constitution and bylaws shows an intent to waive sovereign immunity in federal court."); *Hagen v. Sissteon-Wahpeton Cmty. College*, 205 F.3d 1040, 1044 n.2 (8th Cir. 2000) ("Nor did the College waive its immunity by executing a certificate of assurance with the Department of Health and Human Services in which it agreed to abide by Title VI of the Civil Rights Act of 1964.").

Because the Tribe's sovereign immunity from Title VII suits has been neither abrogated by Congress nor waived by the Tribe, the district court correctly dismissed Mr. Nanomantube's Title VII complaint for lack of jurisdiction. The court's judgment is accordingly **AFFIRMED**.